# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN SHAHINI | **JURY DEMAND** |
| Plaintiff | **CIVIL ACTION No.** |
| v. | |
| THE GOVERNMENT OF THE ISLAMIC REPUBLIC OF IRAN, Its Ministries, Agencies, and Instrumentalities c/o Ministry of Foreign Affairs Khomeni Avenue United Nations Street Tehran, Iran | |
| Defendant | |
| HOSSIEN TAEB, Head of the Intelligence Bureau, of the Islamic Revolution Guards Corps (IRGC) | |
| MOHAMMAD ALI JAFARI Commander of the Islamic Revolution Guards Corps (IRGC) | |
| MOHAMMAD HOSSIEN ZIBAINEJAD Deputy for Intelligence Bureau of the Islamic Revolution Guards Corps (IRGC) | |
| QASEM SOLEIMANI Senior Military Officer Islamic Revolution Guards Corps and Commander of Quds Force. | |
| MOHAMMAD BAGHERI Chief of Staff for the Armed Forces of the Islamic Republic of Iran | |
| SADEQ ARDESHIR LARIJANI Chief Justice of Iran Iran Judicial System | |

| | |
|---|---|
| GHOLAM-HOSSEIN MOHSENI-EJE'I<br>First Vice Chief Justice & Judiciary Spokesperson<br>Iran Judicial System | :<br>:<br>:<br>: |
| ABBAS JAFARI DOLATABADI<br>Tehran Chief Prosecutor | :<br>:<br>:<br>: |
| RICO DEFENDANTS | :<br>: |

_____

## COMPLAINT

Plaintiff Robin Shahini complains of the actions of the Defendant, The Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities, and states in support thereof as follows:

### PARTIES

1. Plaintiff Robin Shahini ("Plaintiff") is a U.S. citizen and a resident of California. Plaintiff was falsely arrested, imprisoned, and tortured for an extended period of time by the Defendants, The Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities (hereinafter referred to as "Iran").

2. Iran is a "foreign state" within the meaning of the FSIA. *See* 28 U.S.C. § 1603 that has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), both at the time of the matters at issue in this Complaint and at the time this Complaint was filed. Iran's activities and conduct complained of herein were outside the scope of immunity provided by the Foreign Sovereign Immunities Act ("FSIA"), including 28 U.S.C. § 1605A.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330 and 1331, and pursuant to the FSIA, 28 U.S.C. § 1605A.

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4).

5. Plaintiff was domiciled in the State of California at the time of his confinement and torture.

## STATEMENT OF FACTS

6. Plaintiff was born in Iran, but left in 1998. He emigrated to the United States in 2000. He was naturalized as a United States Citizen in 2005.

7. Plaintiff graduated from San Deigo State University ("SDSU") with a degree in global business management.

8. Plaintiff graduated in May 2016 from San Diego State University with a degree in International Security & Conflict Resolution, and had been accepted to SDSU's graduate program in Homeland Security.

9. In late May 2016, Plaintiff traveled to Iran to visit his ailing mother and other relatives.

10. Prior to travel, the Plaintiff obtained authorization to travel to Iran from the Iranian Interests Section of the Pakistani Embassy in Washington, D.C. In accordance with and reliance on the permission granted by Iran after review of his application, Plaintiff traveled in compliance with the permission he was granted by Iran.

11. On July 11, 2016, just nine days before he was scheduled to return home, Plaintiff was stopped by members of the Iran's Islamic Revolutionary Guard Corps (hereinafter "IRGC"), all of whom were heavily armed. Plaintiff was arrested and imprisoned by Iran without warning,

nor notice of having committed any unlawful act.

12. Plaintiff was not afforded the opportunity to notify his family or others of his unlawful detention. Despite repeated inquires, Iran did not inform Plaintiff's family of where or why he was arrested and detained.

13. Upon Plaintiff's arrest, he was taken immediately to an clandestine IRGC location in Gorgon City, Iran wherein he was confined to a 5 ft. x 8 ft. cell with dim lighting. Plaintiff was then transferred to another cell of the same dimensions with extremely bright lighting, all intended to create extreme discomfort and inflict intentional harm upon Plaintiff. To the best of Plaintiff's belief, he was kept at this location under these conditions for approximately sixteen (16) days.

14. Plaintiff was then abruptly taken to Amirabad Prison, at every moment in the custody and detention by Iran.

15. During those months, and during the entirety of his captivity, Plaintiff suffered prolonged and continuous physical abuse at the hands of Iran and the Islamic Revolutionary . The torture that Plaintiff endured included sleep deprivation, interrogation, and placement in solitary confinement without cause. Iran recorded the interrogations of the Plaintiff, and made it known to the Plaintiff that the recordings were played for his family, all designed to increase the emotional and psychological infliction of suffering upon the Plaintiff. He was denied proper medical care and suffered severe malnutrition. Plaintiff was shackled in an intentional manner designed to restrict movement, deny comfort, and cause pain. Notwithstanding suffering from asthma, Iran placed the Plaintiff in confinement with external factors, including cramped quarters with no ventilation and cigarette smoke, all intentionally designed to inflict suffering, and maintain a constant campaign of terror against the Plaintiff. The cell block held 300 - 400

inmates, and consisted of cells approximately 8 meters by 4 meters. Each cell housed 30-40 individuals, who shared eighteen (18) bunks. Even though the Plaintiff is a non-violent individual, Iran placed him in a cell block with hardened and violent criminals; two gang members attacked the plaintiff in the prison bathroom using a handmade garrote, and inflicted serious physical injury and emotional trauma upon the Plaintiff. This attack was at the direction of Iran. To enhance the consistent climate of terror, Iran caused the Plaintiff to be repeatedly and randomly taken to a room reserved for inmates awaiting imposition of their sentence of death; all designed to terrorize the Plaintiff and bring about intense fear that Plaintiff was about to be executed. To exacerbate Plaintiff's suffering, a prison official directed all inmates to have no communication nor interaction with the plaintiff, denied telephone use and any outside visitation from friends or family, denied use of inmate facilities such as the library or gymnasium, and even falsely publishing to the general inmate population that the Plaintiff was an evil individual who was infected with deadly and communicable diseases. In contravention to Iranian custom and law, as a political prisoner, Plaintiff was not supposed to be housed with those accused with criminal offenses.

      16. Plaintiff was not permitted to speak with legal counsel or permitted to call or visit with his family. He was denied any consular access to the U.S. Interests Section in Iran in violation of the Vienna Convention on Consular Relations. Eventually, plaintiff went on a hunger strike to protest the terror that was inflicted upon him by Iran. In an effort to break his will, prison officials threatened to allow inmates to rape the Plaintiff.

      17. Plaintiff was told that all of these abuses would continue for as long as it took unless and until he confessed to being a spy for the CIA. Plaintiff refused to sign any confession. The defendants repeatedly told the Plaintiff that if he did not sign the confession that he would be

kept in solitary confinement for years and information about his status would not be given to his family or friends. Essentially that he would disappear.

18. In October 2016, just three months after Plaintiff's arrest and imprisonment—Iran's Revolutionary Court held a brief trial behind closed doors on the false allegations made against the Plaintiff. Plaintiff was not permitted to meet his court-appointed defense attorney and his attorney was not allowed to study his case.

19. On October 15, 2016, the Revolutionary Court in Gorgan City sentenced him to 18 years in prison for "acting against national security," "participating in protest gatherings in 2009," "collaborating with Voice of America (VOA) television" and "insulting the sacred on Facebook."

20. Plaintiff returned to solitary confinement, continuing to suffer the abuses described above and anticipating his execution.

21. Plaintiff's confinement caused him severe and extreme psychological distress, both during his imprisonment and after his release. Since returning home, Plaintiff has suffered post-traumatic stress disorder and other lasting psychological damage from his captivity and torture.

## COUNT I
### (PERSONAL INJURIES CAUSED BY TORTURE AND HOSTAGE-TAKING: 28 U.S.C. § 1605A)

22. Paragraphs 1 through 21 are incorporated herein as though fully set forth.

23. Plaintiff was a citizen of the United States when arrested and held unlawfully by Iran. While being held, Plaintiff was physically and psychologically tortured as described herein. These acts of terrorism, torture, and hostage taking were perpetrated by officials, members, and agents of the IRGC and other agents and instrumentalities of Iran while acting within the scope

of their official capacities.

24. Anti-terrorism provisions codified at 28 U.S.C. § 1605A(a) establish a federal right of action against Iran for committing acts of hostage-taking and torture.

25. Section 1605A provides four elements for a claim against a foreign state, all of which are met here:

>a. That defendant be designated as a state sponsor of terrorism;
>
>b. That claimant be a national of the United States;
>
>c. That the foreign country must be given reasonable opportunity to arbitrate that claim if the conduct took place on foreign soil; and
>
>d. That the act alleged to be caused by "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ."

26. Iran was designated a state sponsor of terrorism by the Secretary of State on January 19, 1984. See 49 Fed. Reg. 2836 (Jan. 23, 1984).

27. Plaintiff was a citizen of the United States at the time of his imprisonment and torture.

28. The definition of "torture" under the FSIA, derived from § 3 of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (Mar. 12, 1992), codified at 28 U.S.C. § 1350 (note), includes:

> *Any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that*

> *individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person is committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.*

29. While Plaintiff was in Iran's custody and control, Iran intentionally subjected Plaintiff to severe pain and suffering, including solitary confinement, physical and mental abuse, and threats against his life, all with the intent to obtain a false confession and coerce his cooperation. Iran's conduct constitutes torture as defined under the FSIA.

30. "Hostage-taking" under the FSIA, as derived from Article 1 of the United Nations International Convention Against the Taking of Hostages, No. 21931 (Nov. 1, 1979), is defined as follows:

> *Any person who seizes or detains and threatens to kill, to injure or to continue to detain another person (hereinafter referred to as the "hostage") in order to compel a third party, namely, a State, an international intergovernmental organization, a natural or juridical person, or a group of persons, to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage commits the offence of taking of hostages ("hostage-taking") within the meaning of this Convention.*

31. Iran detained Plaintiff on false espionage charges and threatened to kill, injure, and continued to detain Plaintiff for eight (8) months in an attempt to win money or other concessions from the United States. Iran's conduct was hostage-taking as defined under the FSIA.

32. A foreign state is held vicariously liable for the acts of its officials, employees, or agents. 28 U.S.C. § 1605A(c)(4).

33. Plaintiff continues to suffer physical and psychological harm to this day as a result of his hostage-taking and torture by Iran.

## COUNT II
## (§ 1605A(c) CAUSE OF ACTION – ASSAULT AND BATTERY)

34. Paragraphs 1 through 33 above are incorporated as if set forth herein.

35. Iran committed or is responsible for numerous acts of assault and battery upon Plaintiff during his confinement and torture.

36. Under the FSIA, a foreign state stripped of its immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

37. Iran is stripped of its immunity under the FSIA because of its acts of hostage taking and torture, and is therefore liable for torts in the same manner and to the same extent as a private individual.

38. Iran applied force to the person of Plaintiff and took actions reasonably tending to create the apprehension of Plaintiff that it was about to apply such force to him. Iran also intended harmful or offensive contact with Plaintiff without his consent. Iran's conduct included intentionally and repeatedly threatening Plaintiff's life, threatening bodily injury, and physically attacking Plaintiff.

## COUNT III
## (§ 1605A(c) CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

39. Paragraphs 1 through 38 above are incorporated as if set forth herein.

40. Iran's use of solitary confinement, threats and physical abuse, and restrictions of Plaintiff's contact with his family was intentional and reckless, extreme and outrageous, and caused Plaintiff severe emotional distress.

41. Iran's treatment of Plaintiff violated acceptable norms of treatment under both U.S. and international law, and was also for that reason extreme and outrageous.

42. Iran's actions left Plaintiff severely emotionally and psychologically damaged.

## COUNT IV
## (§ 1605A(c) CAUSE OF ACTION – FALSE IMPRISONMENT)

43. Paragraphs 1 through 42 above are incorporated as if set forth herein.

44. Plaintiff was deprived of liberty without cause and without legal justification. Defendants knew that they had no authority nor justification to take the actions they committed against the Plaintiff.

45. No evidence or probable cause has been offered by Iran to justify the arrest, detention and torture of the Plaintiff; nor has any proof of any unlawful conduct been set forth. The entire accusation has been baseless.

## COUNT V
## (18 U.S.C. § 1961 et seq. CAUSE OF ACTION - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT)

Plaintiff sues the RICO Defendants, as individuals engaging in racketeering activity of actual and/or threatened kidnaping (18 U.S.C. §1201) and murder (18 U.S.C §1111), conspiracy to commit racketeering activity violating Plaintiff's rights in violation of 18 U.S.C. §1203

(Hostage Taking), for violating Plaintiff's due process rights, constitutional rights, and for misappropriating property, acting behalf of Iran. The RICO Defendants have systematically and continuously, since 2007, conducted a corrupt enterprise in violation of the Racketeer Influenced and Corrupt Organization ("RICO") Act, all of which acts are continuing in nature. As grounds therefore, Plaintiff alleges as follows:

**RICO DEFENDANTS**

46. The following individuals, hereinafter collectively referred to as the "RICO Defendants" are /were high ranking members of the defendant Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities, acting in conspiracy to violate the Racketeer Influenced Corrupt Organizations Act as more fully more fully set forth herein. Defendant HOSSIEN TAEB, is Head of the Intelligence Bureau, of the Islamic Revolution Guards Corps (IRGC), Defendant MOHAMMAD ALI JAFARI is Commander of the Islamic Revolution Guards Corps (IRGC), defendant MOHAMMAD HOSSIEN ZIBAINEJAD is Deputy for Intelligence Bureau of the Islamic Revolution Guards Corps (IRGC), defendant QASEM SOLEIMANI is Senior Military Officer Islamic Revolution, Guards Corps and Commander of Quds Force., defendant MOHAMMAD BAGHERI is Chief of Staff for the Armed Forces of the Islamic Republic of Iran, SADEQ ARDESHIR LARIJANI is Chief Justice of Iran, Iran Judicial System, defendant GHOLAM-HOSSEIN MOHSENI-EJE'I is First Vice Chief Justice & Judiciary Spokesperson, Iran Judicial System, and defendant ABBAS JAFARI DOLATABADI is Tehran Chief Prosecutor. At all times relevant hereto, the RICO Defendants engaged in a pattern of racketeering activity, *to wit*, actual or threatened kidnaping and/or murder, on behalf of Iran. Each RICO Defendant held an official government office/role wherein they had the common goal of achieving gains for Iran.

47. Paragraphs 1 through 46 above are incorporated as if set forth herein.

48. This Count is a civil action for violations of 18 U.S.C. § 1961 et seq. ("Racketeer Influenced and Corrupt Organizations Act" or "RICO"). RICO addresses the corrupt abuse and misuse of organizations, entities, businesses, institutions or even governments or government agencies, such that superficially legitimate entities actually operate for criminal purposes irrelevant to the entity's purpose. The RICO Defendants did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree together with each other, and with others whose names are both known and unknown, to conduct and participate, directly and indirectly, in the conduct of the affairs of the aforementioned enterprise, which was engaged in, and the activities of which affected foreign commerce, through a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. §1201 and 18 U.S.C §1111, in violation of 18 U.S.C. § 1962(d).

49. All RICO Defendants, purported to work for the benefit and on behalf of the Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities, and engaged in a pattern of racketeering activity involving acts and/or threats of murder and kidnaping, intending to cause harm and loss to plaintiff, such harm and loss continuing upon plaintiff's return to the United States. Each defendant agreed that at least two acts of racketeering activity would be committed by a member of the conspiracy in furtherance of the conduct of the enterprise, including but not limited to communications, actions and coordinated conduct. It was part of the conspiracy that defendants and their co-conspirators would commit numerous acts of racketeering activity in the conduct of the affairs of the enterprise.

50. The RICO Defendants engaged in a pattern of actual or threatened kidnaping and murder against United States Citizens, including the plaintiff, as described below:

A. On or about March 9. 2007, American Victim One was kidnaped and threatened with murder by the RICO Defendants. The last Proof of Life American Victim One was December 9, 2011.

B. On or about July 31, 2009, American Victim Two, American Victim Three and American Victim Four, were kidnaped and threatened with murder by the RICO Defendants. American Victims Two, Three and Four were hikers.

C. On or about August 29, 2011, American Victim Five was kidnaped and threatened with murder by the RICO Defendants. American Victim Five was released after the defendant Iran received a total 1.7 billion dollar cash payment from the United States.

D. On or about September 28, 2012 American Victim Six was kidnaped by the RICO Defendants. American Victim Six was released after the defendant Iran received a total 1.7 billion dollar cash payment from the United States.

E. On or about July 22, 2014, American Victim Seven was kidnaped and threatened with murder by the RICO Defendants. American Victim Seven was released after the defendant Iran received a total 1.7 billion dollar cash payment from the United States.

F. In or about 2015, American Victim Eight, was kidnaped and threatened with murder by the RICO Defendants. American Victim Eight was sentenced to 10 years in prison.

G. On or about May 1, 2015, American Victim Nine was kidnaped and threatened with murder by the RICO Defendants. American Victim Nine was released after the defendant Iran received a total 1.7 billion dollar cash payment from the United

States.

H. On or about October 15, 2015, American Victim Ten, was kidnaped and threatened with murder by the RICO Defendants. American Victim Ten was sentenced to 10 years in prison.

I. On or about December 7, 2015, American Victim Eleven, was kidnaped and threatened with murder by the RICO Defendants. American Victim Eleven was released after the defendant Iran received a total 1.7 billion dollar cash payment from the United States.

J. On or about February 1, 2016, American Victim Twelve, was kidnaped and threatened with murder by the RICO Defendants. American Victim Twelve was sentenced to 10 years in prison.

K. On or about July 1, 2016, American Victim Thirteen, was kidnaped and threatened with murder by the RICO Defendants. American Victim Thirteen was sentenced to 27 years in prison, 124 lashes, a $243,000.00 fine and confiscation of all assets.

L On or about October 2016, American Victim Fourteen was sentenced to 10 years after being kidnaped and threatened with murder.

M. On or about August 7, 2016, American Victim Fifteen, was kidnaped and threatened with murder. American Victim Fifteen was sentenced to 10 years in prison.

51. The RICO Defendants engaged in a pattern of racketeering activity wherein RICO Defendants Hossien Taeb, Mohammad Ali Jafari, Mohammad Hossein Zibainejad, , Qasem Soleimani, and Mohammad Bagheri used their official roles in the Islamic Revolutionary Guard

Corps, on behalf of Iran to kidnap and threaten to murder the plaintiff and others, over at least a ten [10] year period of time. RICO Defendants Sadeq Ardeshir Larijani, Gholam-Hossein Mohseni-Eje"I, and Abbas Jafari Dolatabadi, used their official roles in the legal/justice system of Iran, acting on behalf of Iran, to kidnap and threaten with murder the plaintiff and others, over at least a ten [10] year period of time. All RICO Defendants acted in concert with one another to achieve the object of the conspiracy, *to wit*, kidnap and threaten to murder the plainitff and others. For example, Iran's Constitution sets no limits or conditions on the right to legal counsel and Article 35 states, "Both parties to a lawsuit have the right in all courts of law to select an attorney, and if they are unable to do so, arrangements must be made to provide them with legal counsel." According to Article 48 of Iran's Criminal Procedures Regulations, people also have the right to ask for and have a meeting with a lawyer as soon as they are detained. However, the "Note to Article 48" makes exceptions: "In cases of crimes against internal or external security… during the investigation phase, the parties to the dispute are to select their attorneys from a list approved by the head of the judiciary."  The Note to Article 48 was issued by Iran's judiciary and constituted am overt act in concert with the Islamic Revolutionary Guard Corps to facilitate the kidnaping and threats to murder the plaintiff and others.

52.  The racketeering activity of the RICO Defendants resulted in domestic injury and harm to the plaintiff. Plaintiff suffers from unspeakable emotional trauma, lost opportunities in employment, academics, and business, all due to his being kidnaped and being threatened with murder by the RICO Defendants.

53. As a direct objective and result of the RICO Defendants racketeering activity, Iran received approximately 1.7 billion US Dollars for the release of United States Citizens who had been kidnaped and threatened with murder by the RICO Defendants.

54. As a direct objective and result of the RICO Defendants racketeering activity, Iran secured the release of approximately seven prisoners from U.S. prison via Presidential Clemency, and the removal of Interpol Red Notices and dismissal of charges against fourteen [14] other individuals wanted by the United States.

**PRAYER FOR RELIEF**

1. As a result of the personal injuries he has suffered due to acts of torture and hostage-taking, Plaintiff is entitled to economic damages and compensatory damages for pain and suffering, all of which are recoverable under the FSIA. 28 U.S.C. § 1605A.

2. In addition to all appropriate compensatory damages, Plaintiff is entitled to punitive damages because Iran's acts were intentional, malicious, and performed deliberately to injure, damage, and harm Plaintiff.

3. Plaintiff is entitled to consequential damages for his lost earning potential and other long-term damages.

4. Plaintiff is entitled to aggravated damages for defendants' cruelty, torture, and abuse.

5. Plaintiff is entitled to disgorgement damages for Defendants' unlawful monetary and other benefits obtained in exchange for any hostage.

6. Plaintiff is otherwise entitled to general damages and all other applicable damages.

7. Punitive damages should be assessed (under 28 U.S.C. § 1605A(c)).

8. Plaintiff further seeks costs, attorneys' fees, and such other relief as may be just and proper, including pre-judgment interest.

9. For the RICO violations, an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees,

pre-judgment interest, post-interest, costs and an award that this Court deems just and proper.

Respectfully submitted,

/s/
Jeremy Ibrahim
*Attorney for Plaintiff*
Post Office Box 1025
Chadds Ford, PA 19317
(215) 568-1943
jeremyibrahim.esq@gmail.com
